Stephen C. Ruehmann (167533)
**LAW OFFICES OF STEPHEN C. RUEHMANN**
770 L Street, Suite 950
Sacramento, CA 95814
Tel (916) 449-3939/Fax (916) 449-3929
ruehmannlaw@yahoo.com

Marc A. Fisher, Esq. (47794)
**LAW OFFICES OF MARC A. FISHER**
9580 Oak Avenue Parkway, #15
Folsom, CA 95630
Tel (916) 988-8001/Fax (916) 988-8002
mfisher@cosentinolaw.com

Attorneys for Plaintiffs
ANILECH SHARMA and
PARMA SHARMA

**FILED**

DEC 21 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANILECH SHARMA and PARMA SHARMA, <br><br> Plaintiffs, <br><br> vs. <br><br> PROVIDENT FUNDING ASSOCIATES, L.P.; a California limited partnership; PREFERRED MORTGAGE, a California business entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; a California corporation; MAX DEFAULT SERVICES CORPORATION, a California corporation; and DOES 1-100, inclusive, <br><br> Defendants. | Case No.: **C09-05968 VRW** <br><br> **PLAINTIFFS COMPLAINT FOR:** <br><br> 1. **Wrongful Foreclosure** <br> 2. **Rescission and Restitution (15 U.S.C. § 1635)** <br> 3. **Violation of Real Estate Settlement Procedures Act (12 U.S.C. § 2605, et seq.)** <br> 4. **Breach of the Implied Covenant of Good Faith and Fair Dealing** <br> 5. **Breach of Fiduciary Duty** <br> 6. **Fraudulent Misrepresentation** <br> 7. **Fraudulent Concealment** <br> 8. **Civil Conspiracy to Defraud** <br> 9. **Violation of Bus. & Prof. Code §17200, et seq. (Unlawful Business Practices)** <br> 10. **Quiet Title to Real Property** <br> 11. **Declaratory and Injunctive Relief** <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -
COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs ANILECH SHARMA and PARMA SHARMA who aver the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this complaint under 28 U.S.C. §§ 1331 and 1337 because it involves federal questions regarding interpretation and proper application of 15 U.S.C. § 1635 and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA").

2.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      This Court has jurisdiction to render the declaratory judgment Plaintiffs seek pursuant to 28 U.S.C. § 2201.

## VENUE/INTRADISTRICT ASSIGNMENT

4.      Venue is proper in the Oakland branch of this Court pursuant to 28 U.S.C. § 1391(b) and local rules because the Subject Property is located in Alameda County, California.

## PARTIES

5.      Plaintiffs at all relevant times were over the age of 18 and residents of Alameda County, California.  Plaintiffs are the owners of real property located at 22169 Betlen Way, Castro Valley, California 94546, which is a single family residence in which Plaintiffs reside (the "Subject Property").

6.      At all times mentioned herein, Defendant PROVIDENT FUNDING ASSOCIATES, L.P. ("PROVIDENT") was a residential mortgage lender doing business in Alameda County, California.  PROVIDENT's main corporate address is 1633 Bayshore Highway, #155,

Burlingame, CA 94010.  PROVIDENT is ostensibly the lender on the loan at issue pertaining to

the Subject Property.

7.     At all times mentioned herein, Defendant PREFERRED MORTGAGE was a California

business entity, form unknown, doing business in San Ramon, California.  PREFERRED

MORTGAGE was the loan broker who originated the loan for Plaintiffs from PROVIDENT and

was at all times acting as Plaintiffs' and PROVIDENT's agent in doing so.

8.     At all times mentioned herein, Defendant MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC. ("MERS") was and is a confidential computer registry

utilized by lenders to list and trade mortgage loans on the secondary market while avoiding the

legal requisites of recording conveyances of said loans and deeds of trust.  MERS is a California

corporation with a business address of 3321 Vincent Rd., Pleasant Hill, CA 94523.  MERS was

never the lender for the loan at issue, nor is it the present trustee or true beneficiary of the deed

of trust.  Rather, MERS is simply a shell designed to obscure the identity of the true holder, who

remains unknown to Plaintiffs.

9.     At all times mentioned herein, Defendant MAX DEFAULT SERVICES

CORPORATION ("MAX DEFAULT") was and is a California corporation doing business in

Alameda County, California.  MAX DEFAULT's main corporate address is 43180 Business

Park Drive, Suite 100, Temecula, CA 92590.  MAX DEFAULT is the foreclosing trustee on the

promissory note and deed of trust herein at issue.

10.    Plaintiffs are ignorant of the true name and capacity of each defendant sued herein as

DOES 1 through 100, inclusive and therefore sues those defendants by such fictitious names.

Plaintiffs will amend this complaint to include the true names and capacities of those defendants

when they have been ascertained.

11.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each Defendant sued herein in relation to the property they claim an interest in was the agent and/or employee of each of the remaining defendants thereof and at all times was acting within the purpose and scope of such agency and/or employment.

12.     Whenever in this Complaint an act or omission of a corporation, partnership or other business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation, partnership or other business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## **BACKGROUND FACTS**

13.     Plaintiffs are the owners of the Subject Property, a single family residence where Plaintiffs currently reside.  Plaintiffs purchased the Subject Property in October of 2006.

14.     Plaintiffs were solicited by Marquis Buck, an authorized agent of PREFERRED MORTGAGE to purchase their home using PROVIDENT as their lender.  Mr. Buck told Plaintiffs that PREFERRED MORTGAGE was an approved broker for PROVIDENT, and that Plaintiffs qualified for a "special" loan program being offered by PROVIDENT that would allow Plaintiffs to purchase the house at a reduced interest rate without verification of income, employment or assets.  This "special" loan program had an interest rate of 6%.  Plaintiffs believed that this was a fixed-rate loan and was promised they would be able to refinance the loan at a lower rate in one year.  Based on these verbal representations, Plaintiffs agreed to proceed with the transaction.

13      Mr. Buck advised Plaintiffs that he would fill out the loan application for Plaintiffs to make certain they met PROVIDENT's underwriting guidelines.  The broker listed Plaintiffs income in an amount far above their true income without disclosing this fact to Plaintiffs.  None of the Defendants explained any of the loan terms to Plaintiffs when they signed the documents or before.  When Plaintiffs advised Mr. Buck that they didn't understand the loan and needed it

explained, Mr. Buck simply told Plaintiffs they would forfeit their deposit and be responsible for all origination fees, including the Yield Spread Premium that PREFERRED MORTGAGE was receiving from PROVIDENT. Plaintiffs then signed the documents.

14. Plaintiffs later learned that the "special" mortgage loan program was a sub-prime, adjustable-rate, interest-only, negative amortizing loan, and that the 6% interest rate would rise dramatically, along with their payment and principal balance on the loan. Indeed, Plaintiffs' loan adjusted annually based on the London Interbank Offered Rate (the "LIBOR"), with an initial upward adjustment of 2.25%, an annual adjustment thereafter of 2%, and a cap of 11%. The loan provided Plaintiffs was not what was disclosed to them, nor was it reasonable in its terms.

15. Plaintiffs are informed and believe and thereon allege that Defendants regularly approved predatory loans to unqualified borrowers and implemented unlawful lending practices. Further, Plaintiffs allege that PROVIDENT encouraged brokers and loan officers – including Marquis Buck and those working for PREFERRED MORTGAGE - to falsify borrower's income to meet underwriting guidelines when borrowers were otherwise unable to do so. The purpose of this scheme was to maximize the number of loans generated, thus increasing commissions to Defendants and allowing them to bundle large numbers of loans for resale on the secondary market in a bankruptcy remote transaction. The lenders, their agents, employees, and related servicers, including Defendants, then pooled these mortgages into large trusts, securitizing the pool and selling these securities on Wall Street as mortgage-backed securities, bonds, derivatives and insurances, often for twenty or thirty times the original mortgage. Defendants would then use the payments received from the resale of mortgages to fund additional mortgages, which would in turn be resold, thus creating a cycle of speculation based on artificially inflated values.

16. Plaintiffs are informed and believe and thereon allege that in "selling" these mortgage notes on the secondary market, Defendants failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property. Plaintiffs are informed and believe that in fact no interest in the Promissory Note, Deed of Trust or the Subject Property was ever legally transferred to any Defendant by PROVIDENT, and that all other Defendants are

1   simply straw men without legal standing before this Court to assert any legal rights with respect

2   to the underlying transaction.

3   17.     Plaintiffs are further informed and believe and thereon allege that as this process became

4   more and more profitable, the underwriting requirements were repeatedly relaxed to ensure more

5   unsuspecting borrowers and more loans to package and resell on the secondary market.  As the

6   lenders and their agents, including Defendants, reduced their underwriting requirements, they

7   introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance

8   loans, thus depriving homeowners of equity and artificially driving up housing prices – the result

9   of which was uncontrolled and unsustainable increases in housing prices throughout 2005 and

10  2006.  Finally, the scheme collapsed, as borrowers on the predatory loans began to default in late

11  2007.

12  18.     Plaintiffs are informed and believe, and thereon allege, that MERS was an integral part of

13  the great mortgage scheme as it allows its "members" to avoid the legal requisites of legally

14  transferring interests in real property by acting as a straw man for all participants, including

15  Defendants, in the transactions.  However, MERS is not the true beneficiary under any Note or

16  Deed of Trust, but rather is an electronic "registry" of listed Deeds of Trust which are secretly

17  traded, bundled, securitized and resold on Wall Street.  Plaintiffs are further informed that MERS

18  is not licensed to conduct business in California, and that it was not registered with the State of

19  California at the inception of the loan involved herein.

20  19.     Plaintiffs are informed and believe that PROVIDENT at some point transferred its

21  beneficial interest in the Note and Deed of Trust to a third party apart from the remaining

22  Defendants, but the identity of this true beneficiary remains a mystery to Plaintiffs.  Plaintiffs are

23  informed and believes, however, that none of the Defendants is currently the beneficiary of the

24  Note or Deed of Trust and are not "persons entitled to enforce" the security interest under the

25  Note and Deed of Trust as defined in California Commercial Code section 3301.  Plaintiffs

26  allege that Defendants do not own the loan subject to this action and are therefore not entitled to

27  enforce the security interest.  Plaintiffs contend that no legal transfer of the Note, Deed of Trust

28

1  or other interest in the Subject Property was effected which gave any Defendant the right to be

2  named and exercise the powers of trustee, mortgagee, beneficiary or authorized agent of same.

3  20.      Defendants have represented that they have the right to payment under the Note, payment

4  of which was secured by the Deed of Trust. In fact, Defendants, and each of them, are not the

5  real parties in interest because they are not the legal trustee, mortgagee or beneficiary, nor are

6  they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the

7  Note, of holders of the Note, of non-holders of the Note entitled to payments, as required by

8  California Commercial Code sections 3301 and 3309, and by Civil Code section 2924, et seq.

9  Defendants, their agents, beneficiaries or anyone acting on their behalf, are not the holder of the

10  promissory note in due course nor have they received an endorsement of the Promissory Note

11  from the true Note holder.

12  21.      In January of 2009 Plaintiffs begin to experience severe financial problems, making it

13  increasingly difficult for them to make the payment on the note. Accordingly, they submitted

14  loan modification paperwork to PROVIDENT in or about April of 2009 and waited for a reply.

15  Months passed, during which Plaintiffs' repeated calls to PROVIDENT for updates were met

16  with statements that Plaintiffs were not allowed to speak with the modification department.

17  Finally, PROVIDENT offered a trial modification at the present interest rate and balance,

18  additional sums added and amortized to the loan, the term extended and a higher monthly

19  payment. Meanwhile, on or about August 31, 2009, PROVIDENT recorded a Notice of Default

20  and Election to Sell Under Deed of Trust ("NOD"). Despite the NOD, Plaintiffs and their

21  representatives continued to contact PROVIDENT in an effort to engage in the dialogue required

22  by California Civil Code section 2923.5 ("Section 2923.5"), to no avail. On or about December

23  1, 2009, PROVIDENT proceeded to send Plaintiffs a Notice of Trustee Sale, scheduling sale of

24  the Subject Property for December 22, 2009 at 12:30 P.M.

25  22.      Although they were at all times available to meet with PROVIDENT either

26  telephonically or in person, at no time prior to issuing the NOD did PROVIDENT or anyone

27  acting on its behalf contact Plaintiffs to discuss options to pay the loan or to assess their financial

28

situation to avoid foreclosure as required by California Civil Code section 2923.5.  Rather, all contacts were initiated by Plaintiffs alone.

23.     At no time prior to issuing the NOD did PROVIDENT provide Plaintiffs the toll free telephone number for the United States Department of Housing and Urban and Development (HUD) to find a certified counseling agency.

24.     Plaintiffs are informed and believe that PROVIDENT made inaccurate material disclosures with respect to the subject loan in violation of TILA, including the .  Plaintiffs further allege on information and belief that Defendants concealed the true terms of Plaintiffs' loan from Plaintiffs with the intention of inducing Plaintiffs to refrain from investigating and challenging the disclosures until the limitations period for rescinding the loan expired.  Plaintiffs only began to uncover the scope of Defendants' deception within the past week.  Accordingly, on December 17, 2009, Plaintiffs exercised their right to rescind the transaction alleged above and so notified PROVIDENT of their election to do so that very day by overnight mail, which was received by PROVIDENT on December 18, 2009.  A true and correct copy of Plaintiffs' rescission letter with proof of delivery is attached hereto as Exhibit 1.  PROVIDENT has yet to respond to this rescission.

25.     In an effort to determine the full extent of Defendants' fraud and unlawful acts, Plaintiffs mailed a Qualified Written Request ("QWR") to PROVIDENT on December 17, 2009, a true and correct copy of which is attached hereto as Exhibit 2.  PROVIDENT has yet to respond to this QWR.

## FIRST CAUSE OF ACTION
### Wrongful Foreclosure [Negligence per Se]
### Against All Defendants

26.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraph 1 to 25 above as though fully set forth herein.

27.     Plaintiffs allege that at all times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiffs were members of the class of persons protected under Civil Code Sections 2923.5 and 2924.  Plaintiffs allege further that all times mentioned herein

Defendants had a duty to comply with the foreclosure avoidance and workout plan requirements of Civil Code Section 2923.5. Plaintiffs further allege that PREFERRED MORTGAGE, as the purported foreclosing trustee, was at all times herein an agent to both Plaintiffs and the remaining defendants, and that PREFERRED MORTGAGE had a duty to Plaintiffs to ensure that foreclosure on the Subject Property was conducted fairly and according to prescribed statutory procedures, including those contained in Civil Code §§ 2923.5 and 2924.

28. Plaintiffs maintain on information and belief that there have been numerous improprieties in the assignment, transfer and exercise of the power of sale contained in the Deed of Trust, and that the alleged trustee, PREFERRED MORTGAGE, is not properly appointed or authorized by the true beneficiary to foreclose upon the Subject Property. Nonetheless, PREFERRED MORTGAGE is proceeding with a trustee sale of Plaintiffs' property on November 24, 2009.

29. Plaintiffs allege further that Civil Code § 2923.5 expressly required Defendants to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that defendants were required to conduct these communications and contacts prior to filing the notice of default against Plaintiffs.

30. At all times prior to Defendants' filing of the notice of default, Plaintiffs were available to meet with defendants or their authorized representatives to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure. In fact, Plaintiffs hired representatives and attorneys to contact defendants to explore options for Plaintiffs to avoid foreclosure. These representatives made telephone calls and sent correspondence to Defendants which went unanswered as these Defendants, and each of them, proceeded to notice the default and pending sale of the Subject Property without complying with Civil Code § 2923.5.

31.     Despite Plaintiffs efforts to explore foreclosure avoidance options, these Defendants, and each of them, failed and refused to:  (1) evaluate Plaintiffs' financial condition regarding foreclosure avoidance; (2) advise Plaintiffs of their statutory right to meet with Defendants regarding such foreclosure avoidance; and (3) advise Plaintiffs of the toll-free federal Department of Housing and Urban Development ("HUD") telephone number regarding counseling opportunities to avoid the subject foreclosure.  Furthermore, Plaintiffs allege that Defendants reported their filing of the notice of default and foreclosure on the Subject Property to credit reporting agencies, and that such reporting has damaged Plaintiffs' credit history and severely impaired Plaintiffs' ability to obtain consumer credit and home mortgage financing.

32.     As a direct and proximate result of the wrongful conduct described herein, Plaintiffs have suffered compensable damages according to proof.  Further, Plaintiffs will suffer an irreparable injury not compensable in damages if PREFERRED MORTGAGE is allowed to proceed with an unauthorized trustee sale of the Subject Property.

## SECOND CAUSE OF ACTION
### Rescission under 15 U.S.C. §1635
### Against Defendants PROVIDENT, MERS and DOES 1-100

33.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34.     Plaintiffs have rescinded their loan on the Subject Property by providing a written notice of cancellation to PROVIDENT on December 17, 2009.  Rescission is specifically authorized by 15 U.S.C. § 1635.

35.     As of December 20, 2009, Defendants have taken no action to remove the security interest in the Subject Property or to return the monies due Plaintiffs.  On the contrary,

Defendants are proceeding to foreclosure on the cancelled note and deed of trust, which if completed will prevent Plaintiffs from exercising their right of rescission.

36.     Defendants failure to acknowledge or abide by Plaintiffs' notice of cancellation and acts to proceed with foreclosure of the Subject Property violates 15 U.S.C. Section 1635.

37.     Plaintiffs are entitled to rescind the subject transaction and seek to enforce this right by the present action.

### THIRD CAUSE OF ACTION
**RESPA Violations under 12 U.S.C. § 2605, et seq.**
**Against All Defendants**

37.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 36 above as though fully set forth herein.

38.     The subject loan is a mortgage loan under the provisions of RESPA, 12 U.S.C. § 2605, et seq.  A violation of RESPA is also made unlawful under California state law by Financial Code § 50505, which specifies that any violation of RESPA is also a violation of the California Mortgage Lending Act.

39.     Plaintiffs are not certain at this point in time exactly which entity was and is actually the beneficiary, lender or servicer at any given point in time, including the present.  However, due to the conspiratorial nature of the conduct complained of herein, and also due to Defendants' failure to properly advise Plaintiffs as to the roles and identities of the various entities, these allegations are made as to all Defendants.  Defendants have submitted a QWR to determine precisely who is involved in this loan and their roles, but PROVIDENT has yet to respond.

40.     Plaintiffs are informed and believe, and thereon allege, that Defendants have engaged in a pattern and practice of non-compliance with the requirements of RESPA, including failing and refusing to respond in full to properly submitted QWR's.  Plaintiffs are informed and believe that

these patterns and practices are designed to conceal TILA and RESPA violations, and to conceal the identity of the owner and true beneficiary of the loan.

41.     Plaintiffs are informed and believe, and thereon allege, that Defendants violated RESPA by receiving money and/or other things of value for referrals of settlement service business related to the subject loan, including secret kickbacks and yield spread premiums to loan brokers such as PREFERRED MORTGAGE.  In return, PREFERRED MORTGAGE steered Plaintiffs into loans at rates and on terms well above market rates and above those that Plaintiffs could have obtained absent such practices.

42.     As a direct and proximate result of Defendants' failure to comply with RESPA, Plaintiffs have suffered and continue to suffer compensable damages.

## FOURTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Against PROVIDENT and DOES 1 - 100

43.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraph 1 to 42 above as though fully set forth herein.

44.     The loan agreements between Plaintiffs and PROVIDENT included the written promissory note and the Deed of Trust.  Each of these agreements contained an implied covenant of good faith and fair dealing under which Defendants were obligated to refrain from engaging in any conduct the would prevent Plaintiffs from fully enjoying the benefits of these contracts.

45.     As members of the class of persons protected under Civil Code § 2923.5, Defendants' compliance with this statute was and remains a benefit to which Plaintiffs were entitled as an implied covenant of the loan agreements.  However, in failing and refusing to comply with the foreclosure avoidance provisions of Civil Code § 2923.5, Defendants breached the subject loan agreements by the following: (1) failing to evaluate Plaintiffs' financial condition regarding

foreclosure avoidance; (2) failing to advise Plaintiffs of their statutory right to meet with

PROVIDENT regarding such foreclosure avoidance; and (3) failing to advise Plaintiffs of the

toll-free HUD telephone number regarding counseling opportunities to avoid the subject

foreclosure.  Furthermore, Plaintiffs allege that Defendants reported filing of the notice of default

and foreclosure on the Subject Property to credit reporting agencies, and that such reporting

damaged Plaintiffs' credit history and severely impaired Plaintiffs' ability to obtain consumer

credit and home mortgage financing.

46.     As a direct and proximate result of Defendants' breach of the covenant of good faith and

fair dealing described herein, Plaintiffs have suffered damage to their consumer credit history

and home mortgage creditworthiness with resulting financial loss, and they have suffered

additional compensatory damages.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### Against PROVIDENT, PREFERRED MORTGAGE and DOES 1 - 100

47.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraph 1

to 46 above as though fully set forth herein.

48.     Defendant PREFERRED MORTGAGE was explicitly Plaintiffs' agent for the purpose of

providing Plaintiffs with the subject loan; it was a mortgage broker and financial advisor to

Plaintiffs.  As such, PREFERRED MORTGAGE owed Plaintiffs fiduciary duties.  Defendant

PROVIDENT knew of the fiduciary relationship between Plaintiffs and PREFERRED

MORTGAGE.

49.     Defendant PREFERRED MORTGAGE, by and through their agents, owed a fiduciary

duty to Plaintiffs to act primarily for their benefit, to act with proper skill and diligence, to

procure the best deal possible for Plaintiffs, and to not make a personal profit from their agency

at the expense of its principal, and to disclose and procure consent to any fees they would receive.

50.     PREFERRED MORTGAGE owed a duty of loyalty and a duty to deal fairly with Plaintiffs at all times.  All other Defendants, including PROVIDENT, owed a duty to not aid and abet the breach of fiduciary duty owed by PREFERRED MORTGAGE to Plaintiffs.

51.     PREFERRED MORTGAGE willfully and intentionally breached their fiduciary obligations and their duty of loyalty to Plaintiffs by obtaining the subject loan with unfavorable terms and for a self-serving purpose:  To receive undisclosed and excessive fees and kickbacks from PROVIDENT.  Defendants further breached their fiduciary duties by not disclosing to Plaintiffs that they could have obtained a loan on better terms, that they would receive undisclosed profits on the resale, securitization and servicing of the subject loan, and by not advising Plaintiffs that they could not afford the loan itself.  Defendants PROVIDENT and DOES 1 – 100 aided and abetted in the breached of fiduciary duties by PREFERRED MORTGAGE.

52.     As a direct proximate result of Defendants' breached as described herein, Plaintiffs have been damaged and are entitled to recover actual damages.  Further, Defendants' willful, oppressive and malicious breaches of fiduciary duty justify the award of exemplary damages under California Civil Code section 3294.

**SIXTH CAUSE OF ACTION**
**Fraud – Intentional Misrepresentation**
**Against Defendants PROVIDENT, PREFERRED MORTGAGE and DOES 1 - 100**

53.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 to 52 above as though fully set forth herein.

54.     As alleged herein, Defendants have made several representations to Plaintiffs regarding the subject loan and Subject Property. In particular, Defendants represented to Plaintiffs that the loan procured was on the best terms available for Plaintiffs, that it was a fixed-rate loan, that Plaintiffs could refinance the loan in one year, and that Plaintiffs could afford the loan.

55.     Defendants' representations concerning the subject loan were material to Plaintiffs' decision to purchase the property, to accept the loan procured for them by Defendants, and to make payments on said loan. Unfortunately, Defendants' representations were false.

56.     Defendants made the above representations to Plaintiffs with knowledge of their falsity or with reckless disregard for their trust and falsity.

57.     Defendants made the above representations to Plaintiffs with the knowledge and intent that Plaintiffs would rely thereon and with the intent to deceive Plaintiffs and induce them into consummating the subject loan.

58.     In reasonable and justifiable reliance on Defendants' representations, and without knowledge of their falsity, Plaintiffs were induced to their detriment to proceed to closing on the subject loan. But for Defendants' misrepresentations, Plaintiffs would not have consummated the subject loan.

59.     As a direct and proximate result of Defendants' intentional fraudulent conduct, Plaintiffs have suffered and will suffer compensable damages.

60.     Defendants committed such fraud with malice and oppression, and Plaintiffs are therefore entitled to an award of punitive damages. Further, Plaintiffs will suffer an irreparable injury not compensable in damages if MAX DEFAULT is allowed to proceed with the trustee sale of the Subject Property presently scheduled for December 22, 2009.

/ / /

## SEVENTH CAUSE OF ACTION
### Fraud - Concealment
### Against Defendants PROVIDENT, PREFERRED MORTGAGE, MERS and DOES 1-100

61.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 to 60 above as though fully set forth herein.

62.     Plaintiffs allege that Defendants concealed material facts from them as alleged above, including that they could have obtained a loan on better terms than offered, that they would not be able to refinance the loan in one year, that the loan was an interest only, negative amortization ARM, that they could afford the payments on the loan, and that their loan would be resold and securitized to an unknown third party.  Defendants concealed these facts to induce Plaintiffs to consummate the loan and to make payments thereunder.

63.     Plaintiffs are informed and believe that many additional material facts regarding their loan, its origination, ownership and servicing, have not been disclosed to Plaintiffs but will be revealed by PROVIDENT's response to Plaintiffs' QWR and in the course of discovery in this case.  Plaintiffs will supplement these allegations and amend their complaint as soon as the full extent of Defendants' concealment becomes known.

64.     As a direct and proximate result of Defendants' fraudulent concealment described herein, Plaintiffs have suffered compensatory damages according to proof.

65.     Defendants committed such fraudulent concealment with malice and oppression, and Plaintiffs are therefore entitled to an award of punitive damages.  Further, Plaintiffs will suffer an irreparable injury not compensable in damages if MAX DEFAULT is allowed to proceed with the trustee sale of the Subject Property presently scheduled for December 22, 2009.

/ / /

## EIGHTH CAUSE OF ACTION
### Civil Conspiracy to Defraud
### Against Defendants PROVIDENT, PREFERRED MORTGAGE, MERS and DOES 1-100

66.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 to 65 above as though fully set forth herein.

67.     Plaintiffs allege that Defendants had a duty to provide Plaintiffs with accurate, truthful and complete information regarding their loan and purchase of the Subject Property.

68.     Plaintiffs allege further that Defendants made numerous material misrepresentations and concealed key facts from Plaintiffs to induce them to enter into and make payments on the subject loan.

69.     Defendants, and each of them, committed the above-described acts pursuant to an agreement by and between Defendants to defraud Plaintiffs into entering the subject loan, to pay and make secret profits from the origination, resale and servicing of the subject loan, and to induce Plaintiffs to forego seeking redress for the wrongs committed until their property was foreclosed upon and forever lost.

70.     As a direct and proximate result of Defendants' agreement and conspiracy to commit the fraudulent acts described herein, Plaintiffs have suffered compensable damages according to proof.

71.     Additionally, Defendants engaged in this conspiracy to defraud with malice and oppression, and Plaintiffs are therefore entitled to an award of punitive damages. Further, Plaintiffs will suffer an irreparable injury not compensable in damages if the ultimate object of Defendants' conspiracy – the wrongful foreclosure of Plaintiffs' property – is permitted to take place.

/ / /

## NINTH CAUSE OF ACTION
### Violation of Bus. & Prof. Code §17200, et seq.
### (Unlawful Business Practices)
### Against All Defendants

72.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 to 71 above as though fully set forth herein.

73.     Plaintiffs allege that by engaging in the above-described acts and practices, Defendants have committed one or more acts of unlawful business practices within the meaning of California Business and Professions Code §§17200 *et seq.* These unlawful business practices include, without limitation as to matters that may be revealed through discovery, misrepresentations and concealment the inception, terms, ownership and servicing or Plaintiffs' loan, foreclosure on the Subject Property without complying with Civil Code §§ 2923.5 and 2924, and the conspiracy to defraud and defrauding of Plaintiffs to induce them to enter into and continue making payments under the subject loan. Each of these unlawful business practices has caused Plaintiffs substantial financial harm. Moreover, Plaintiffs will also suffer an irreparable injury not compensable in damages if the ultimate object of Defendants' conspiracy – the wrongful foreclosure of Plaintiffs' property – is permitted to take place

74.     In addition to the relief requested in the Prayer below, Plaintiffs seek a constructive trust over, and restitution of the monies collected and realized by Defendants.

75.     Plaintiffs allege that the unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendants as described herein. Plaintiffs have no other remedy at law that will prevent Defendants' misconduct, as alleged herein, from occurring and/or recurring in the future, or to prevent the unlawful foreclosure of the Subject Property.

76.     Plaintiffs allege that they are entitled to equitable relief, including restitution,

disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts

and practices, attorney's fees and costs, declaratory relief, and a permanent injunction barring

Defendants from foreclosing on the Subject Property or otherwise interfering with Plaintiffs' use

and enjoyment of same.

## TENTH CAUSE OF ACTION
### Quiet Title to Real Property
### Against All Defendants

77.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 to 76

above as though fully set forth herein.

78.     The purpose of quiet title is to establish title against adverse claims to real property or

any interest in the Real Property *(Code of Civil Procedure of California 760.020)*.

79.     Plaintiffs are the owners of the Subject Property per the Deed of Trust executed by

Plaintiffs.

80.     The basis of Plaintiffs' interest in title is a Deed of Trust from Defendants, granting the

Subject Property to Plaintiff, and recorded in the Official Records of the County of Alameda.

81.     Plaintiffs are seeking to quiet title against the claims of Defendants as follows:

Defendants are seeking to hold themselves out as the fee simple owners of the subject property,

when in fact they do not have possession and are not holders of the original note or Deed of

Trust in due course.  While Defendants claim to be beneficiaries and/or trustees under various

documents, Defendants in fact have no right, title, interest, or estate in the Subject Property, and

Plaintiffs' interest is adverse to Defendants' claims of ownership.

82.     Plaintiff therefore seeks a judicial declaration that the title to the Subject Property is

vested in Plaintiffs alone and that Defendants be declared to have no estate, right, title, or interest

in the Subject Property and that said Defendants, and each of them, be forever enjoined from

asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiff herein.

### ELEVENTH CAUSE OF ACTION
**Declaratory and Injunctive Relief
Against All Defendants**

83.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1

to 82 above as though fully set forth herein.

84.    Plaintiffs allege that an actual controversy exists as to the following issues:

   a.  Plaintiffs contend that PROVIDENT is not the present holder in due course or

beneficiary of the promissory note at issue herein.  However, Defendants contend that

PROVIDENT is the present owner and beneficiary.

   b.  Plaintiffs contend that Defendants are not authorized or empowered to proceed with

foreclosure on the Subject Property, in that PROVIDENT is not the holder in due course or

beneficiary, and that MERS has never been the true beneficiary, such that any appointment of

MAX DEFAULT as foreclosing trustee is invalid, as is the NOD and NOS.  However,

Defendants contend they are empowered to proceed with foreclosure, that PROVIDENT is

the holder in due course or beneficiary, that MERS was or is the true beneficiary, that

appointment of MAX DEFAULT was therefore valid, as was the NOD and NOS.

   c.  Plaintiffs contend that Defendants failed to comply with the foreclosure avoidance and

workout plan requirements of Civil Code Section 2923.5.  However, Defendants contend

they have complied with all such requirements.

   d.  Plaintiffs contend that they have rescinded the loan and that such rescission bars

Defendants from proceeding with foreclosure.  However, Defendants contend that the loan

may not be rescinded and that the foreclosure can proceed.

85.     Plaintiffs desire a judicial determination of their rights and duties, and declaration as to validity for the finance loan agreement, finance loan transaction, and Defendants' right to proceed with remedies to foreclose on the note, inclusive of a non-judicial foreclosure of the Subject Property.

86.     Plaintiffs allege that a judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights under the Note and as to Defendants' right to proceed with its remedies, inclusive of the non-judicial foreclosure of the Subject Property.

87.     Plaintiffs allege that Defendants' actions have undermined their right to the Subject Property and have interfered, and continue to interfere with Plaintiffs' right of possession as the owner of the Subject Property.

88.     By the actions above and set forth herein, Plaintiffs have a strong likelihood of prevailing on the merits of the case.  Plaintiffs request that this court grant a Preliminary Injunction and Temporary Restraining Order first as to any action to set the Subject Property for a non-judicial sale pursuant to foreclosure proceedings, and secondly a permanent injunction precluding defendants from engaging in the wrongful conduct identified herein in the future.

### JURY TRIAL DEMANDED

89. Plaintiffs demand that their case be tried before a jury.

### PRAYER FOR RELIEF

        **WHEREFORE**, Plaintiffs pray for judgment against all of the Defendants and each of them as follows:

1.   That the foreclosure or attempted foreclosure of the Subject Property is deemed illegal and void and the same be immediately and permanently enjoined; and that Defendants are

prevented from engaging in any sale, transfer, conveyance, action or any conduct adverse to Plaintiffs' interest therein;

2.   That the underlying loan transaction be deemed void as a result of Defendants' various breaches and violations;

3.   That the actions of all of the Defendants be determined to be unfair and deceptive business practices in violation of California Statutes and that this Court awards all such relief to Plaintiffs as they may be entitled, including injunctive relief, treble damages and an award of costs and attorney's fees;

4.   For compensatory damages according to proof;

5.   For punitive damages according to proof;

6.   For an award of reasonable attorney's fees and costs of suit incurred;

7.   For an immediate, preliminary and permanent restraining order and injunction preventing Defendants or any of their agents or representatives from taking any further action on the Subject Property, including but not limited to foreclosure or any unlawful detainer action; and

8.   For any other relief the Court may deem just and proper.

Dated:  December 21, 2009

Stephen C. Ruehmann
Attorney for Plaintiffs

# EXHIBIT 1

# EXHIBIT 1

# LAW OFFICES OF MARC A. FISHER

9580 Oak Avenue Parkway #15
Folsom, CA 95630
Phone: 916-988-8001
Fax: 916-988-8002

December 17, 2009

Provident Funding Associates, LP
Legal Department
1633 Bayshore Highway #155
Burlingame, CA 94010

Fax 650-652-1350

**US Mail Certified Return Receipt Requested**

## NOTICE OF CANCELLATION

re:   Loan # 216080088
      Borrower: Anilech Sharma
      SS#: 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
      DOB: 4-27-67
      Property Address: 22169 Betlen Way, Castro Valley, CA 94546
      Loan Date: October 5, 2006
      Initial Amount: $470,800.00
      Original Lender: Provident Funding Associates, LP

Dear Sir or Madam:

Please be advised that we represent Anilech Sharma. You are herby given notice that Anilech Sharma is canceling the above referenced loan. In conformance with your agreement and applicable federal law, the related deeds of trust are hereby canceled.

Pursuant to the federal Truth in Lending Act ("TILA"), borrowers have the right to rescind the transaction within 3 years of receipt of his notice of his right of rescission and all other material disclosures required by TILA and the regulations thereunder. 15 U.S.C. § 1635(a).

Although this loan closed on October 5, 2006, the borrower did not discover the TILA violations until December 15, 2009. Further, we are informed and believe that these violations were fraudulently concealed from the borrower, and that you participated in

said concealment.  Under Federal and State laws, these facts delay running of the applicable limitations period.  Because the borrower's claim did not arise until discovery of the violations, borrower's exercise of their right of rescission is timely.

By this letter, borrower rescinds the transaction.

By way of further explanation, material disclosures were omitted or made erroneously in the course of the transaction.  These include, but are not limited to:

> (1) Borrower did not receive accurate disclosures of the amount financed, finance charge and annual percentage rate.

Within 20 calendar days of receipt of this notice you are required to release your deed of trust on the above referenced property and return all monies paid by the borrower, including, but not limited to, principal, interest, late and finance charges, origination fees and expenses, escrow fees and title insurance and any other costs paid to you and others in relation to this loan.

Upon completion of the above borrower will tender to you any monies or properties you have given to borrower, or their reasonable value.

Please send the release of deed of trust, the monies and an accounting to:

Anilech Sharma
c/o Law Offices of Marc A. Fisher
9580 Oak Avenue Parkway #15
Folsom, CA 95630

I hereby rescind this loan.

X _____
Anilech Sharma

Should you have any questions, please contact this firm.

Sincerely,

LAW OFFICES OF MARC A. FISHER

Marc A. Fisher
Attorney for
Anilech Sharma

**FedEx**

Español | Customer Support | FedEx Locations   Search [ ] [Go]

| Package/Envelope | Freight | Expedited | Office/Print Services ✳ |

Ship | Track ▸ | Manage ▸ | Business Solutions ▸

## Detailed Results

Printable Version     Help

Enter tracking number ▬▬

| Detailed Results | Notifications |

---

Tracking no.: 853769447875                                    ✉ E-mail notifications

### Delivered

Initiated ✓   Picked up   In transit   Delivered

**Delivered**
Signed for by: E.GREEN

**Shipment Dates**                              **Destination**

Ship date ⓘ  Dec 17, 2009                      Signature Proof of Delivery ⓘ
Delivery date ⓘ  Dec 18, 2009 8:51 AM

---

### Shipment Facts                                              Help

| Service type | Priority Envelope | | Delivered to | Mailroom |
| | | | Reference | SHARMA |

---

### Shipment Travel History                                     Help

Select time zone:  Select  ▾                    Select time format: 12H | 24H

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Dec 18, 2009 8:51 AM | Delivered | | |
| Dec 18, 2009 8:18 AM | On FedEx vehicle for delivery | SOUTH SAN FRANCISCO, CA | |
| Dec 18, 2009 8:05 AM | At local FedEx facility | SOUTH SAN FRANCISCO, CA | |
| Dec 18, 2009 4:13 AM | Departed FedEx location | OAKLAND, CA | |
| Dec 17, 2009 11:11 PM | Arrived at FedEx location | OAKLAND, CA | |
| Dec 17, 2009 8:39 PM | Left FedEx origin facility | RANCHO CORDOVA, CA | |
| Dec 17, 2009 8:06 PM | Picked up | FOLSOM, CA | Tendered at FedEx Kinko's, now FedEx Office |

---

Global Home | Small Business Center | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Security & Privacy | Site Map |
This site is protected by copyright and trademark laws under US and International law. All rights reserved.© 1995- 2009 FedEx

**FedEx** Express · **US Airbill**

FedEx Tracking Number: 8537 6944 7875

**From**

Date: 12-17-09  Sender's FedEx Account Number: 3246 88200

Sender's Name: _____ Phone: 916 958-8001

Company: LAW OFFICE OF MARC A. FISHER

Address: 9580 OAK AVENUE PKWY

City: FOLSOM  State: CA  ZIP: 95630

Your Internal Billing Reference: SHARMA

**To**

Recipient's Name: LEGAL DEPT  Phone: 650 652-1300

Company: PROVIDENT FUNDING ASSOCIATES

Recipient's Address: 1633 BAYSHORE HIGHWAY #155

City: BURLINGAME  State: CA  ZIP: 94010

Try online shipping at fedex.com

Questions? Go to our Web site at fedex.com or call 1.800.GoFedEx 1.800.463.3339.

**4a Express Package Service**
- [X] FedEx Priority Overnight
- [ ] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service**
- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**
- [ ] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling**
- [ ] SATURDAY Delivery
- [ ] HOLD Weekday at FedEx Location
- [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
- [X] No
- [ ] Yes (Shipper's Declaration not required)
- [ ] Yes (Shipper's Declaration)
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** Bill to:
- [X] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages ___ Total Weight ___ Total Declared Value $___ .00

**8 NEW Residential Delivery Signature Options**
- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

520

Sender's Copy

# EXHIBIT 2

# EXHIBIT 2

**LAW OFFICE OF MARC A. FISHER**
9580 Oak Avenue Pkwy. #15
Folsom CA. 95630
Ph. (916) 988-8001
Fax (916) 988-8002

'2 - Ø11 - 2009

~~Provident Funding Associates~~ L? (Financial Institution)

P. O Box 5914 _____ (Address)

Santa Rosa CA 95402 _____ (City, State, Zip)

866 - 210 - 7340 ~~6u5526~~ Ph. 650 - 251 - 2092 ___ Fax
650 - 259 - 2691 Bruce

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

## QUALIFIED WRITTEN REQUEST

Pursuant to the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. section 2605(e)) and the Truth in Lending Act (TILA) (15 U.S.C. section 1601)

Loan No.: 0216050085 / 0216090003

Borrower: Anileen Sharma ___ Co-Borrower: Parma Sharma

Soc. Sec. No.: 602 - 51 - 2462 ___ Soc. Sec. No.: 602-31 - 6271

Subject Property: 22164 Betlen Way

City: Castro Valley ___ State: CA ___ Zip: 94546

To whom it may concern,

I represent the mortgagor in regards to the above-referenced loan. I have attached my client's signed authorization to release financial information for the purpose of this Qualified Written Request. My client disputes the amount that is owed according to the Monthly Billing Statement and requests that you send me information about the fees, costs and escrow accounting on the above-referenced loan. In addition, there is serious concern regarding the actual ownership and servicing of the loan and underlying security interest and whether such ownership has been properly disclosed to the mortgagor and properly recorded with the County Clerk and Recorder's Office.

Page 1 of 5

QWR.RESPA.ver1.1

Specifically, we are requesting an itemization and copies of the following:

1. A Statement of Account and application of all payments made on this Promissory Note from inception of the loan to the date of your response to this request.

2. A breakdown of the amount of claimed arrears or delinquencies, including an itemization of all fees charged to the account.

3. The original Promissory Note; please accompany with a verified statement identifying the owner and holder in due course, and stating whether the Promissory Note is in the possession of the holder thereof and has not been lost or destroyed.

4. If you do not have the original Promissory Note, a statement to that effect, including the last known holder of the Promissory Note and the circumstances regarding its loss.

5. Identify all past and present owners/beneficiaries or partial owners/beneficiaries of the original Promissory Note, and the dates and all documentation related to the assignments thereof, and any and all amounts of consideration paid for such assignments.

6. Identify the present "Lender" of this loan for notification purposes.

7. An accounting of all payments on this Promissory Note that went to each owner of the Promissory Note.

8. The amount of all payments on this Promissory Note that went to each owner and part owner of the Promissory Note.

9. An accounting of payment history from borrower on the Promissory Note and the Deed of Trust, including who such payments went to, the breakdown of such payments as to principal, interests, fees, costs and a detail of each and every credit and debit posted on relating to this Deed of Trust and Promissory Note.

10. The original Deed of Trust; please accompany with a verified statement identifying the owner and holder in due course, and that it is in the possession of the owner and holder thereof and has not been lost or destroyed.

11. If the Deed of Trust does not exist, a statement to that effect, including the last known holder of the Deed of Trust and the circumstances regarding its possession or loss.

12. Identify all past and present owners or beneficiaries of the Deed of Trust, and any and all assignments thereof.

13. Identify all past and present Trustees of the Deed of Trust, and any and all assignments or agency agreements with regards thereto.

14. Identify all assignments, transfers, allonges, or other documents related to this Deed of Trust and/or Promissory Note, including but not limited to, copies of all such documents.

15. An explanation of how the amount due on the Monthly Billing Statement was calculated and an explanation and dates when this amount was adjusted and why this amount was adjusted.

16. The payment dates, purpose of payment and recipient of all escrow items charged to this account.

17. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase.

18. A copy of any annual escrow statements and notices of a shortage, deficiency or surplus.

19. A statement of all fees, rebates, refunds, kickbacks, profits and gains made to any entity involved in this Deed of Trust and Promissory Note.

20. All letters, emails, faxes or other correspondence (including transmittals) regarding this Deed of Trust and Promissory Note.

21. All uncertificated security and certificates of asset backed securities related to this Deed of Trust and Promissory Note.

22. Names and addresses of all servicers, sub-servicers and designated agents of this Deed of Trust and/or Promissory Note, and all payments for services rendered on this Deed of Trust and Promissory Note that went to such servicers and sub-servicers.

23. All servicing agreements related to this Deed of Trust and/or Promissory Note.

24. All pool or pooling agreements related to this Deed of Trust and/or Promissory Note.

25. All deposit agreements related to this Deed of Trust and/or Promissory Note.

26. All custodial agreements related to this Deed of Trust and/or Promissory Note.

27. All master purchasing agreements related to this Deed of Trust and/or Promissory Note.

28. All issuer agreements related to this Deed of Trust and/or Promissory Note.

29. All commitments to guarantee related to this Deed of Trust and/or Promissory Note.

30. All master agreement for servicer's principal and interest custodial account related to this Deed of Trust and/or Promissory Note.

31. All servicer's escrow custodial account documents related to this Deed of Trust and/or Promissory Note.

32. All release of interest documents related to this Deed of Trust and/or Promissory Note.

33. All trust agreements related to this Deed of Trust and/or Promissory Note.

34. All descriptions, definitions, legends and codes used in the above-referenced documents.

35. All escrow analyses conducted in relation to this Deed of Trust and/or Promissory Note

36. A statement of the above-referenced documents that are recorded in electronic format and a description of such electronic format and copies thereof.

37. A statement as to the identity of the recipients of all fees ever assessed against this account and the amount thereof.

38. All statements of all reports of late fees collected on this account and the identification of the recipients of such reports.

39. A statement as to whether late fees are deemed as "interest".

40. A statement as to all charges assessed on this account other than principal, interest and late fees and the identity of the recipients of such collected fees.

41. A statement as to the current amount of force-placed insurance held on the property, and the identity of such insurer. Identify any relationship that existed or now exists between the insurer and any party that had a past or present interest of any sort in the Deed of Trust and/or Promissory Note.

42. A statement of all mortgage insurance paid related to this Deed of Trust and Promissory Note.

43. The names and addresses of all persons responding to this request.

When asked to "identify" please include: Proper Organization Name; Contact person; Contact Person's Position; Physical and Mailing Addresses; Relevant Dates (of acquisition and disposition, for instance); Phone Number; and Fax Number. For purposes of this Qualified Written Request, and in conformance with California law and common usage, the terms "Deed of Trust" and "Mortgage" are used inter-changeably.

I look forward to receiving your acknowledgement of this Request within 20 business days and your resolution of these matters within 60 business days as required by the Real Estate Settlement Procedures Act. In the interim, should you have any questions, please call me.


Very Respectfully,

Marc A. Fisher
Attorney at Law




Attachment: AUTHORIZATION TO RELEASE CONFIDENTIAL FINANCIAL AND MORTGAGE INFORMATION