Darren J. Devlin, Esq./CSB #176261
LAW OFFICES OF DARREN J. DEVLIN
43180 BUSINESS PARK DRIVE, SUITE 100
TEMECULA, CA 92590
Telephone: 619-465-8200
Facsimile: 760-494-8789

Attorneys for Defendants PROVIDENT FUNDING ASSOCIATES, L.P. a California limited partnership; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; a Delaware Corporation; and MAX DEFAULT SERVICES CORPORATION; a California corporation

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANILECH SHARMA and PARMA SHARMA,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENT FUNDING ASSOCIATES, L.P., a California limited partnership; PREFERRED MORTGAGE, a California business entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; MAX DEFAULT SERVICES CORPORATION, a California corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CV09-05986 VRW<br>09-5968<br><br>[Assigned to the Honorable Vaughn R. Walker]<br><br>OPPOSITION TO PLAINTIFFS ANILECH SHARMA AND PARMA SHARMA'S APPLICATION FOR PRELIMINARY INJUNCTION<br><br>Date:        January 7, 2010<br>Time:        10:00 a.m.<br>Courtroom:  6 |

Defendants PROVIDENT FUNDING ASSOCIATES, L.P., a California limited partnership ("Defendant Provident Funding"); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, a Delaware corporation ("Defendant MERS"); and MAX DEFAULT SERVICES CORPORATION, a California corporation ("Defendant Max Default"), collectively

("Defendants"), respectfully submit the following Opposition to Plaintiffs ANILECH SHARMA and PARMA SHARMA'S ("Plaintiffs"), Application for Preliminary Injunction.

## FACTUAL BACKGROUND

If there is a situation where a lender takes advantage of a borrower in the origination of a loan, or where a lender commits wrongdoing in foreclosing on its security interest in a property, this is not it. By Plaintiffs' own admission, the reason for their current situation is their own financial condition. See Plaintiffs' Complaint ("Complaint"), paragraph 21: "In January of 2009, Plaintiffs began to experience severe financial problems, making it increasingly difficult for them to make payment on the note." Defendants have done everything within their power to try to help Plaintiffs, and have complied at all times with all relevant laws both in the origination of the subject loan and in foreclosing their security interest in the property. The terms of the Note which forms the basis of this action, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference, clearly indicate that it is NOT a "subprime negative amortization loan", contrary to Plaintiffs' contentions, and further, the fixed-rate interest-only period extends until October, 2011, which reveals that the terms of the loan did not change causing Plaintiffs to default. Plaintiffs were able to perform under the terms of the Note, and apparently had no issues with doing so, until their "severe financial problems" began "in January of 2009". Defendants regret being required to foreclose upon the property, but it is the only remedy left available to them at this point. Plaintiffs simply cannot proffer any evidence that would permit this court to grant their application for a preliminary injunction.

I.

## PLAINTIFFS DO NOT MEET THEIR BURDEN OF PROOF FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs fail to proffer any evidence that would permit this court to grant their application for a preliminary injunction. "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the

("Defendants"), respectfully submit the following Opposition to Plaintiffs ANILECH SHARMA and PARMA SHARMA'S ("Plaintiffs"), Application for Preliminary Injunction.

## FACTUAL BACKGROUND

If there is a situation where a lender takes advantage of a borrower in the origination of a loan, or where a lender commits wrongdoing in foreclosing on its security interest in a property, this is not it. By Plaintiffs' own admission, the reason for their current situation is their own financial condition. See Plaintiffs' Complaint ("Complaint"), paragraph 21: "In January of 2009, Plaintiffs began to experience severe financial problems, making it increasingly difficult for them to make payment on the note." Defendants have done everything within their power to try to help Plaintiffs, and have complied at all times with all relevant laws both in the origination of the subject loan and in foreclosing their security interest in the property. The terms of the Note which forms the basis of this action, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference, clearly indicate that it is NOT a "subprime negative amortization loan", contrary to Plaintiffs' contentions, and further, the fixed-rate interest-only period extends until October, 2011, which reveals that the terms of the loan did not change causing Plaintiffs to default. Plaintiffs were able to perform under the terms of the Note, and apparently had no issues with doing so, until their "severe financial problems" began "in January of 2009". Defendants regret being required to foreclose upon the property, but it is the only remedy left available to them at this point. Plaintiffs simply cannot proffer any evidence that would permit this court to grant their application for a preliminary injunction.

## I.

## PLAINTIFFS DO NOT MEET THEIR BURDEN OF PROOF FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs fail to proffer any evidence that would permit this court to grant their application for a preliminary injunction. "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the

possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of the hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985). A court may issue a preliminary injunction if plaintiff demonstrates "'either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.'" *Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (quoting *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)); *see Miller v. California Pacific Metal Center*, 19 F.3d 449, 456 (9th Cir. 1994).[1] "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).

"Irreparable harm," for purposes of obtaining a preliminary injunction, is harm "that cannot be redressed by legal or equitable remedy following trial." *Optinrealbig.com LLC v. Ironport Systemns, Inc.*, 325 F.Supp.2d 1037, 1050 (N.D. Cal. 2004) (citing *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)).

Even when viewed in a light most favorable to Plaintiffs, there is no evidence to suggest that they would succeed on the merits of the Complaint.

### A. Plaintiffs Fail to Establish Probable Success on the Merits

To seek the rescission remedy available under 15 U.S.C. § 1635 which governs the borrower's right under the Truth in Lending Act ("TILA"), the loan cannot be a purchase-money loan. Under this section a borrower's right to rescind does not extend to purchase-money transactions. 15 U.S.C. § 1635(c) *see also* 15 U.S.C. § 1602(w). The loan which is the subject

---

[1] A "serious question" is one as to which the moving party has "a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (quotations omitted).

OPPOSITION TO ANILECH SHARMA AND PARMA SHARMA'S APPLICATION FOR PRELIMINARY INJUNCTION
4

matter of the Complaint is a purchase-money loan, executed in October of 2006. Plaintiffs executed a Note and Deed of Trust evidencing the loan as a purchase money loan. See Exhibit A. As such, Plaintiffs are unable to exercise any remedy under TILA's rescission provisions. *See* 15 U.S.C. § 1602(w).

Alternatively, even if the rescission remedy was available to Plaintiffs, the subject loan was funded in October of 2006 and the relevant statute of limitations for bringing an action for rescission under TILA, is three years. The three-year statute of limitations would have run on or about October 6, 2009, at the latest and Plaintiffs did not attempt to rescind until December, 2009, well outside the applicable three-year window. Complaint at P. 22.

### B. Each of Plaintiffs' Causes of Action are Contradicted by the Uncontroverted Facts.

Plaintiffs readily concede that they are in default. "In January of 2009 Plaintiffs begin to experience severe financial problems, making it increasingly difficult for them to make the payment on the note." Complaint ¶ 21. "On or about August 31, 2009, PROVIDENT recorded a Notice of Default..." *Id.* Thus, it is uncontested that Plaintiffs defaulted under the terms of the loan.

The Complaint alleges causes of action for: declaratory judgment; injunctive relief; fraud; breach of good faith and fair dealing; breach of fiduciary duty; violation of 15 U.S.C. § 1601 et seq.; and rescission. Plaintiffs contend that the Defendants "made inaccurate material disclosures with respect to the subject loan in violation of TILA..." Complaint ¶ 24. "Plaintiffs further allege ...that Defendants concealed the true terms of Plaintiffs' loan from Plaintiffs..." *Id.* Defendants supplied Plaintiffs with all material disclosures as required under 12 C.F.R. § 226.32(c)-(d).

Each of these causes of action are barred by applicable statutes of limitation. Furthermore, each of Plaintiffs' claims lacks merit and evidentiary support, and, accordingly, Plaintiffs fail to meet their burden of establishing reasonable probability of success on the merits. In this case, the subject closing was a standard purchase-money transaction and the evidence presented herewith clearly demonstrates that Defendants complied fully with its internal policies

and procedures and all applicable laws.

In order to demonstrate the lack of validity of Plaintiffs' allegations, and thus their inability to satisfy the requisite burden of proof for preliminary injunctive relief, this Opposition will address each cause of action in the Complaint.

Plaintiffs allege that Defendants were negligent per se in not meeting Defendants' duty to comply with the foreclosure avoidance and workout plan requirements of Civil Code Section 2923.5 and 2924. Complaint ¶ 27. Plaintiffs additionally falsely claim that Defendants did not advise Plaintiffs of the toll-free HUD telephone number regarding counseling opportunities to avoid the subject foreclosure. Complaint ¶ 31. Plaintiffs complied with the duties imposed under Civil Code Section 2923.5 and 2924 by offering to Defendants the required foreclosure avoidance and workout plans outlined in the relevant code sections through communications and contacts with the Plaintiffs to help them avoid foreclosure on the Subject Property, as well as the toll-free number for HUD. A true and correct of the letter provided by Defendant Provident Funding to Plaintiffs on or about June 15, 2009, setting forth all the required information is attached hereto as Exhibit "B" and incorporated herein by reference. These communications and contacts were conducted prior to filing the notice of default against the Plaintiffs. (Notice of Default was recorded in August, 2009).

Plaintiffs further contend that they "have rescinded their loan by providing written notice of cancellation...on December 17, 2009." Complaint ¶ 34. Real estate financing transactions such as the one herein are governed in part by the TILA, 15 U.S.C. §§ 1635(a) and 1602(w). As such, a purchase-money transaction is exempt from rescission under the remedies provided for in TILA and 15 U.S.C. § 1635(a) and § 1602(w).

Plaintiffs additionally allege that Defendants violated RESPA, 12 U.S.C. § 2605, et seq and Financial Code § 50505, which specifies that any violation of RESPA is a violation of the California Mortgage Lending Act. Complaint ¶ 38. Plaintiffs allege that they are not sure at this point in time which entity was and is actually the beneficiary, lender or servicer at any given point in time, including the present. Complaint ¶ 39. Plaintiffs made payments on the Note at

least up until the date they defaulted, so clearly they had no issue with the identity of the servicer or beneficiary until the filing of the instant action.

Plaintiffs in their fourth cause of action, allege a breach of the implied covenant of good faith and fair dealing against Defendants. Complaint ¶ 43. However, "Defendant does not have any special relationship with Plaintiffs that would support recovery in tort for breach of the implied covenant of good faith and fair dealing." *Paek v. Plaza Home Mortg. Inc.* 2009 WL 1668576, 3 (C.D.Cal., 2009). Moreover, the Court cannot conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing. *Id.*

Plaintiffs fifth allegation is for breach of fiduciary duty by Defendants. Complaint ¶ 50. The relationship between a lending institution and its borrower-client is not fiduciary in nature. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095; *See also Sakai v. Merrill Lynch Life Ins. Co.* 2008 WL 4193058, 3 (N.D.Cal.,2008) and *See also Mangindin v. Washington Mutual Bank* 2009 WL 1766601, 8 (N.D.Cal.,2009). A commercial lender is entitled to pursue its own economic interest in a loan transaction.[2] Defendants are under no such fiduciary duty to Plaintiffs for the underlying transaction and Plaintiffs have not alleged any facts to support that a relationship that would give rise to such a duty exists. Similarly, a fiduciary duty cannot be imposed on a loan servicer or a trustee in a non-judicial foreclosure sale. *De Los Santos v. World Capital Financial* 2009 WL 649163, 4 (C.D.Cal., 2009) and *See Hendrickson v. Popular Mortg. Servicing, Inc.* 2009 WL 1455491, 7 (N.D.Cal., 2009).

Plaintiffs next allegations are for intentional misrepresentation, concealment, and civil conspiracy to defraud respectively. Complaint ¶¶ 53, 61 and 66. Fed.R.Civ.P. Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false

---

[2] CAJUR BANKS §226 "Thus the lender-borrower relationship is not fiduciary in nature. Moreover, the "special relationship" necessary to allow recovery of tort damages for breach of the implied covenant of good faith and fair dealing does not exist between a bank and its borrower."

OPPOSITION TO ANILECH SHARMA AND PARMA SHARMA'S APPLICATION FOR PRELIMINARY INJUNCTION
7

representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007). A key element of the cause of action for fraud is justifiable reliance, to which Plaintiffs only assertion of reliance is that Plaintiffs were told that they would be able to refinance to a lower rate in one year by Marquis Buck who is not an agent of the Defendants. Complaint ¶ 14. Plaintiffs allegations do not meet the strict pleading requirements of Rule 9(b) in that the Plaintiffs' complaints merely reference "Defendants" as a whole and does not specify the parties or relationships of the parties, making the assertions to the Defendants. Complaint ¶¶ 54, 62 and 67. Furthermore, Plaintiffs failure to specify the parties asserting the statements or concealments upon which Plaintiffs relied, fails to establish those parties that Plaintiffs purport to act in concert so as to meet the requirements for a civil conspiracy.

    Plaintiffs' ninth cause of action is for Violation of Bus. & Prof. Code § 17200. Et seq. Complaint ¶ 72. This allegation fails because the underlying violations of Civil Code §§ 2923.5 and 2924 which trigger unlawful business practices within the meaning of the relevant sections of the Business and Professions Code as stated inter alia and evidenced by Exhibit "B" were at all times complied with by Defendants.

    Plaintiffs' tenth cause of action to quiet title to real property is equally fatal on its face. Complaint ¶ 77. Plaintiffs claim that Defendants are seeking to hold themselves out as the fee simple owners of the subject property. Complaint ¶ 81. Defendants are not seeking to hold themselves out as the fee simple owner of the subject property, as the Defendants are not seeking fee simple ownership of the subject property, but rather to exercise the rights and privileges of the trustee of the subject property under the power of sale clause in the Deed of Trust.

    Lastly, Plaintiffs seek declaratory and injunctive relief in their eleventh cause of action. Complaint ¶ 83. Injunctive relief requires a balancing test of the hardships suffered by the Plaintiffs against the likelihood of success on the merits of Plaintiffs claims. Here, the Plaintiffs likelihood for success on the merits does not exist, as Plaintiffs are seeking a rescission of their purchase-money loan which is exempt from rescission pursuant to 15 U.S.C. § 1635.

Furthermore, Defendants at all times complied with the disclosure and notice requirements under Civil Code Sections 2923.5 and 2924. Additionally, Defendants have no fiduciary duty owing to Plaintiffs, inter alia, which in turn should require Plaintiffs to post a bond if the Opposition is denied.

Given their complete lack of factual underpinnings, none of Plaintiffs' eleven causes of action withstand an attack on the merits. Defendants have presented substantial and competent evidence that the Plaintiffs' claims are wholly without factual merit. Plaintiffs present no evidence that would allow them to avoid foreclosure. In doing so, they cannot meet their burden of "probable success on the merits" under <u>Dollar Rent a Car</u> or <u>Clear Channel</u>. No matter how sympathetic Plaintiffs' arguments are regarding irreparable harm, <u>Clear Channel</u> requires <u>some</u> evidence that Plaintiffs could succeed at trial. Plaintiffs are entirely unable to produce any evidence supporting their allegations. As Plaintiffs cannot demonstrate probability of success on the merits, the Court should not grant preliminary injunctive relief.

In the alternative, if the Court is inclined to grant injunctive relief, Plaintiffs should be required to post a bond.

## II.

## CONCLUSION

Unfortunately, Plaintiffs' Loan is already nearly nine months behind, and Plaintiffs have given no indication they are able to meet their obligations under the loan. As Plaintiffs have not

///
///
///
///
///
///
///
///

and cannot establish that they are entitled to the injunctive relief requested, Defendants respectfully request that the Court deny Plaintiffs' Application and grant it reasonable attorneys' fees and costs incurred herein.

DATED: January  J , 2010

LAW OFFICES OF DARREN J. DEVLIN

By: _____
Darren J. Devlin, Esq.
Attorneys for Defendants PROVIDENT FUNDING ASSOCIATES, L.P., a California limited partnership; MORTGAGE ELECTRONIC SYSTEMS REGISTRATION CORPORATION, a Delaware corporation; and MAX DEFAULT SERVICES CORPORATION, a California corporation

 

## INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

Loan No. 216080088

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

10/3/2006        CASTRO VALLEY           CA
                 [City]                  [State]

22169 BETLEN WAY, CASTRO VALLEY, CA 94546
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S.$470,800.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Provident Funding Associates, L.P., A California Limited Partnership. I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2. **INTEREST**

   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.000 % . The interest rate I will pay will change in accordance with Section 4 of this Note.

   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**

   (A) **Time and Place of Payments**

   I will make a payment every month on the first day of the month beginning on 11/1/2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on 10/1/2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at P.O. BOX 5914
                                        SANTA ROSA, CA. 95402
   or at a different place if required by the Note Holder.

   (B) **Amount of My Initial Monthly Payments**

   Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

   Each of my initial monthly payments will be in the amount of U.S. $ 2,354.00 . This amount may change in accordance with subsection (C) below.

   (C) **Monthly Payment Changes**

   The First P&I Payment Due Date is 11/1/2011 .

   Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable after Initial Period)–Single Family–Freddie Mac UNIFORM INSTRUMENT Form 5537 5/04 (rev. 7/05)

Page 1 of 5

0166.doc 1/20/2006
10/3/2006

Borrowers Initials: ___

Ver. 2

EXHIBIT A

loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A) Interest Change Dates**

   The interest rate I will pay may change on 10/1/2011 . and may change on that day every 12 th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

   **(B) The Index**

   Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**

   Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage point(s) ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

   The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Interest Change Date will not be greater than 11.000 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than two percentage points (2.000%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.000 %.

   **(E) Effective Date of Changes**

   My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**

   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

---

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable after Initial Period)–Single Family–Freddie Mac UNIFORM INSTRUMENT Form 5537 5/04 (rev. 7/05)

Page 2 of 5

0166.doc 1/20/2006
10/3/2006

Borrowers Initials: ___ ___
Ver. 2

EXHIBIT A

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late Charges for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% or the maximum allowable by state law  of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

   (B) **Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) **No Waiver by Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the

---

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable after Initial Period)-Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5537 5/04 (rev. 7/05)

Page 3 of 5                                  Borrowers Initials: _____ _____

0166.doc 1/20/2006
10/3/2006                                                                     Ver. 2

EXHIBIT A

promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A)   UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable after Initial Period)–Single Family–Freddie Mac UNIFORM INSTRUMENT  Form 5537  5/04 (rev. 7/05)
Page 4 of 5
0166.doc 1/20/2006
10/3/2006
Borrowers Initials: _____
Ver. 2

EXHIBIT A

sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)      _____(Seal)
ANILECH SHARMA                    Borrower   PARMA D SHARMA                    Borrower

_____(Seal)      _____(Seal)
                                  Borrower                                     Borrower

*[Sign Original Only]*

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac
UNIFORM INSTRUMENT Form 5537 5/04 (rev. 7/05)
Page 5 of 5
0166.doc 1/20/2006
10/3/2006                                                                                    Ver. 2

EXHIBIT A

# Provident Funding
### The Mortgage Price Leader

ANILECH SHARMA
PARMA D SHARMA

Monday, June 15, 2009

ANILECH SHARMA
PARMA D SHARMA
22169 BETLEN WAY
CASTRO VALLEY, CA 94546

Loan Number: 0███0088
Property Address: 22169 BETLEN WAY, CASTRO VALLEY, CA 94546

        Aviso importante para las personas que hablan Espanol. Esta notificacion es de suma importancia, pues afecta su derecho a continuar viviendo en su casa. Si no comprende el contenido de esta carta, obtenga una tradiccion Inmediatamente. Si usted no responde dentro trienta (30) díaz a partir de la fecha de esta notificacion, usted puede perder su casa en el futuro.

Prior to beginning foreclosure, we are required under the terms of your loan to notify you of your default. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

Your loan is in default. As of today, your loan is due for May 1, 2009. The amount needed to bring your loan current, and prevent foreclosure, totals $4,801.31. This amount includes monthly installments and outstanding fees.

1. This amount, plus the payment becoming due next month, must all be paid within thirty (30) days of the days of the date of this notice.

2. Failure to make full payment will result in acceleration of the total loan amount and the commencement of foreclosure proceedings. You are informed that you have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding, the non-existence of a default or any other defense you may have to acceleration and foreclosure.

3. We are giving you notice that we may make or cause to be made, reasonable entries upon and inspections of your property. We will attempt to contact you before we make such entry. However, if the property is determined to be vacant, or abandoned we will take steps necessary to protect the property against vandalism or other types of damage, such as exposure to the elements.

4. All foreclosure costs and expenses incurred will be your responsibility to pay.

5. Provident Funding is not asserting that you have any affirmative obligation to reinstate or payoff this loan. However, as a courtesy Provident Funding is advising you of the amount necessary to reinstate and/or payoff the loan so you are aware that we will be pursuing legal remedies to acquire title to the property based on the default status of the loan.

6. If you are unable to pay your mortgage as agreed it is very important we speak to you. There are many options that may be available for homeowners facing financial hardship.

7. Homeownership counseling is available through the Department of Housing and Urban Development. Please contact (800) 569-4287 for the HUD approved counseling agency nearest you.

8. If you or any other person on this mortgage loan have been called to active duty or to the National Guard, assistance may be available for you under the Service Members Civil Relief Act. To obtain additional information contact the toll free military OneSource Center at (800) 342-9467.

PLEASE CONTACT OUR OFFICE IMMEDIATELY TO DISCUSS THIS VERY SERIOUS SITUATION.
Counseling Department
P.O. Box 5914
Santa Rosa, CA 95402-5914
Phone: (800) 696-8199
Fax: (707) 568-2737
8:00 AM to 5:00 PM PT Mon-Fri

EXHIBIT B