IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANILECH SHARMA and PARMA SHARMA, | No  C 09-5968 VRW |
| Plaintiffs, | ORDER |
| v | |
| PROVIDENT FUNDING ASSOCIATES, LP, a California limited partnership; PREFERRED MORTGAGE, a California business entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, a California corporation; MAX DEFAULT SERVICES CORPORATION, a California corporation; and DOES 1 through 100, inclusive, | |
| Defendants. / | |

On October 8, 2010, defendants Provident Funding Associates, LP, Mortgage Electronic Registration Services, Inc and Max Default Services Corporation moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Doc #28.  On December 15, 2010, plaintiffs partially opposed defendants' motion.  Doc #30.  For the reasons set forth below, the court GRANTS defendants' motion to dismiss the second, third, fourth, fifth, sixth, seventh, eighth, tenth and eleventh causes of action and DENIES defendants' motion to dismiss the first and ninth causes of action.

I

Plaintiffs are owners of a single family residence located at 22169 Betlen Way, Castro Valley, California 94546 ("the Property"). Doc #1 at 2. The complaint alleges that defendant Preferred Mortgage ("Preferred") was a loan broker doing business in San Ramon, California and defendant Provident Funding Associates, LP ("Provident") was a residential mortgage lender doing business in Alameda County. Id at 2-3. Plaintiffs allege that they were solicited by Marquis Buck, an authorized agent of Preferred, to purchase their home using Provident as the lender. Id at 4. Buck allegedly told them that they qualified for a "special" loan program offered by Provident that would allow them to purchase their home at a reduced rate of 6%. Id. Plaintiffs allege that they believed the loan was a fixed-rate loan and that they would be able to refinance the loan at a lower rate in one year. Id. Based on these representations, plaintiffs agreed to the loan transaction.

Plaintiffs allege that they later learned that the "special" loan program was really "a sub-prime, adjustable-rate, interest-only, negative amortizing loan, and that the 6% interest rate would rise dramatically, along with their payment and principal balance on the loan." Id at 5. In 2009, plaintiffs began to experience financial problems and submitted loan modification paperwork to Provident. Id at 7. Provident offered a trial modification. Id. On August 31, 2009, Provident recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD"). Id. Defendant Max Default Services Corporation is the foreclosing trustee on the promissory note and deed of trust. Id at 3.

2

Plaintiffs allege that they continued to contact Provident "in an effort to engage in the dialogue required by California Civil Code section 2923.5[], to no avail." Id at 7. On or about December 1, 2009, Provident sent plaintiffs a notice of trustee sale, scheduling sale of the property for December 22, 2009. Id. Plaintiffs allege that "at no time prior to issuing the NOD did [Provident] or anyone acting on its behalf contact Plaintiffs to discuss options to pay the loan or to assess their financial situation to avoid foreclosure as required by California Civil Code section 2923.5." Id at 7-8. Plaintiffs also allege that Provident did not provide plaintiffs with the telephone number for the United States Department of Housing and Urban Development ("HUD") to find a certified counseling agency. Id at 8. On December 17, 2009, plaintiffs notified Provident of their decision to rescind the loan transaction. Id. On December 21, 2009, plaintiffs filed their complaint in this action.

## II

A motion to dismiss under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." <u>Navarro v Block</u>, 250 F3d 729, 732 (9th Cir 2001). Because FRCP 12(b)(6) focuses on the sufficiency of a claim — and not the claim's substantive merits — "[o]rdinarily[] a court may look only at the face of the complaint to decide a motion to dismiss." <u>Van Buskirk v Cable News Network, Inc</u>, 284 F3d 977, 980 (9th Cir 2002).

A motion to dismiss may be granted based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

3

under a cognizable legal theory. <u>Balistreri v Pacifica Police Dep't</u>, 901 F2d 696, 699 (9th Cir 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Cahill v Liberty Mutual Ins Co</u>, 80 F3d 336, 337-38 (9th Cir 1996). But "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v Golden State Warriors</u>, 266 F3d 979, 988 (9th Cir 2001), citing <u>Clegg v Cult Awareness Network</u>, 18 F3d 752, 754-55 (9th Cir 1994).

### III

Plaintiffs do not oppose defendants' motion to dismiss the second cause of action for rescission and restitution, fourth cause of action for breach of the implied covenant of good faith and fair dealing, tenth cause of action for quiet title and eleventh cause of action for declaratory and injunctive relief. Doc #30 at 2. Plaintiffs also do not oppose defendants' motion to dismiss their fifth cause of action for breach of fiduciary duty, sixth cause of action for fraudulent misrepresentation, seventh cause of action for fraudulent concealment and eighth cause of action for civil conspiracy to defraud, although plaintiffs intend to re-plead these four causes of action as a single cause of action for fraud. Id. Accordingly, the court GRANTS defendants' motion to dismiss the second, fourth, fifth, sixth, seventh, eighth, tenth and eleventh causes of action.

Plaintiffs argue that the complaint is sufficient with respect to the first cause of action for wrongful foreclosure, third cause of action for violation of the Real Estate Settlement

4

Procedures Act ("RESPA") and ninth cause of action for unlawful business practices under California Business & Professions Code section 17200 et seq. Doc #30 at 2. The court considers each of these causes of action in turn.

### A

Plaintiffs' first cause of action for wrongful foreclosure is styled as a "negligence per se" claim. Doc #1 at 8. Plaintiffs allege that defendants violated California Civil Code section 2923.5, which sets forth certain procedures with which a lender must comply prior to filing a notice of default. Doc #1 at 8-10. Defendants argue that plaintiffs' claim fails because "[d]efendants performed all duties owing to Plaintiffs under the terms of the Civil Code Section 2923.5, the loan and in Defendants [sic] role as a traditional mere money lender." Doc #28 at 11. Accordingly to defendants, "a lender owes no duty of care to a borrower, unless 'the lender actively participates in the financed enterprise beyond the domain of the usual money lender.'" Id at 10, quoting Wagner v Benson, 101 Cal App 3d 25, 35 (1980).

In California, negligence per se is an evidentiary doctrine codified at California Evidence Code section 669. Under that statute, "a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation." Quiroz v Seventh Ave Center, 140 Cal App 4th 1256, 1285 (2006). The presumption arises if four elements are established: (1) the defendant violated a statute or regulation; (2) the violation

5

caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect. <u>Alejo v City of Alhambra</u>, 75 Cal App 4th 1180, 1184-85 (1999). The court will evaluate plaintiffs' allegations with respect to each element.

### 1

Plaintiffs allege that defendant violated California Civil Code section 2923.5, which imposes substantive obligations on lenders to "contact the borrower by phone or in person to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." <u>Mabry v Superior Court</u>, 185 Cal App 4th 208, 209 (2010) (internal quotations omitted). The statute provides:

> During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.

Cal Civ Code § 2923.5(a)(2). The initial contact must occur at least thirty days prior to the filing of a notice of default. Cal Civ Code § 2923.5(a)(1). Plaintiffs allege that "at no time prior to issuing the NOD did [Provident] or anyone acting on its behalf contact Plaintiffs to discuss options to pay the loan or to assess their financial situation to avoid foreclosure as required by

United States District Court
For the Northern District of California

California Civil Code section 2923.5." Doc #1 at 7-8. Plaintiffs further allege that each defendant "proceeded to notice the default and pending sale of the Subject Property without * * * (1) evaluat[ing] Plaintiff's financial condition regarding foreclosure avoidance; (2) advis[ing] Plaintiffs of their statutory right to meet with Defendants regarding such foreclosure avoidance; and (3) advis[ing] Plaintiffs of the toll-free [HUD] telephone number regarding counseling opportunities to avoid the subject foreclosure." Id at 9-10. These allegations are sufficient to state a violation of section 2923.5.

Defendants argue that they owed no duty of care because they acted as mere "money lenders." Doc #28 at 10. The cases cited by defendants, however, address only the general duties of lenders. In <u>Wagner v Benson</u>, the court affirmed the dismissal of a negligence claim based on a bank's alleged negligence in loaning money to the borrowers for a "risky venture." 101 Cal App 3d 27, 35 (1980). Similarly, in <u>Nymark v Heart Federal Savings & Loan Association</u>, the court held that a lender owed no duty of care to a borrower "in appraising the borrower's collateral to determine if it [was] adequate security for a loan." 231 Cal App 3d 1089, 1095-97 (1991). Unlike both of these cases, defendants were the subject of an explicit statutory duty: the substantive obligations imposed by California Civil Code section 2923.5 to communicate with plaintiffs prior to filing a notice of default. Because plaintiffs allege sufficient facts to establish that defendants failed to meet these obligations, the complaint adequately alleges the first element of negligence per se.

**2**

Plaintiffs allege that "[a]s a direct and proximate result of the wrongful conduct described herein, Plaintiffs have suffered compensable damages according to proof." Doc #1 at 10. Plaintiffs also allege that they attempted to engage in the dialogue required by section 2923.5, were unable to obtain a permanent modification of the loan and that defendants proceeded with the trustee sale without contacting plaintiffs to discuss options to avoid foreclosure. Id at 7. Read as a whole, these allegations are sufficient to allege that plaintiffs suffered damage as a result of the alleged statutory violation.

**3**

The third and fourth elements ask whether the injury resulted from the type of occurrence the statute was designed to prevent and whether plaintiffs are members of the class of persons the statute was intended to protect. <u>Alejo</u>, 75 Cal App 4th at 1184-85. "Section 2923.5 was enacted in 2008 as a manifestation of a felt need for urgent action in the midst of a cascading torrent of foreclosures." <u>Mabry</u>, 185 Cal App 4th at 219. The legislature found that the bill was "necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure." Cal Civ Code § 2923.5, 2008 Legislative Findings (SB 1137). There can be little question that the occurrence alleged in

the complaint is of the kind that section 2923.5 was designed to prevent. Similarly, as alleged owners of a residential property subject to foreclosure, plaintiffs are within the class of persons that section 2923.5 was designed to protect. The complaint sufficiently alleges the third and fourth elements of plaintiffs' negligence per se theory of liability.

Accordingly, the court DENIES defendants' motion to dismiss the first cause of action.

B

Plaintiffs' third cause of action for violations of RESPA is based on two distinct alleged violations: (1) defendants "violated RESPA by receiving money and/or other things of value for referrals of settlement service business related to the subject loan, including secret kickbacks and yield spread premiums to loan brokers such as [Preferred]," and (2) defendants "engaged in a pattern and practice of non-compliance with the requirements of RESPA, including failing and refusing to respond in full to properly submitted [qualified written requests]." Doc #1 at 11-12. The court examines each theory of liability.

1

Although plaintiffs do not specify the section of RESPA that supports their claim based on improper kickbacks, 12 USC § 2607 sets forth the general prohibition on unearned kickbacks and fees. The court will therefore analyze plaintiffs' claim under that section. Section 2607(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value

9

pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 USC § 2607(a). Section 2607(c)(2) provides: "Nothing in this section shall be construed as prohibiting * * * the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for service actually performed." 12 USC § 2607(c)(2). HUD, the administrative agency charged with enforcing RESPA, issued a Statement of Policy on March 1, 1999 setting forth standards for evaluating whether a payment violates section 2607. The Statement of Policy provides a two-pronged test:

> In determining whether a payment from a lender to a mortgage broker is permissible under Section 8 of RESPA, the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid. The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal. The second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

1999 Statement of Policy, 64 Fed Reg 10080, 10084 (1999). "The HUD test focuses on whether compensable services of the sort identified in the 1999 Statement are provided, and if they are, then on whether the total compensation (without regard to whether it comes from the borrower, the lender, or both) is reasonably related to the services provided." Schuetz v Banc One Mortgage Corp, 292 F3d 1004, 1013 (9th Cir 2002). Thus, to establish that a particular payment violated section 2607, a plaintiff must establish either that no goods, facilities or services were provided or, if they

//

**10**

were, that the payment at issue was not reasonably related to the goods, facilities or services. Id at 1014.

The complaint fails to allege facts regarding whether any goods, facilities or services were provided by the alleged recipient of the payment or whether the payment was reasonably related to any such goods, facilities or services. See Doc #1 at 12. The conclusory allegation that defendants received "money and/or other things of value for referrals of settlement service business" does not address whether such payments were made in connection with the provision of legitimate services. As a result, plaintiffs fail to allege a violation of RESPA based on the alleged receipt or payment of "secret kickbacks."

2

Plaintiffs' RESPA claim for an alleged failure to respond to qualified written requests is governed by section 2605(e). That section provides "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days * * * unless the action requested is taken within such period." 12 USC § 2605(e)(1)(A). Not later than sixty days after the receipt of a qualified written request, the servicer shall make any appropriate corrections to the borrower's account and provide a written explanation to the borrower that includes the information requested by the borrower or an explanation regarding why the information requested is unavailable. 12 USC § 2605(e)(2).

Plaintiffs allege that defendants "fail[ed] and refus[ed] to respond in full to properly submitted [qualified written requests]." Doc #1 at 11. Plaintiffs also allege that they mailed a qualified written request to Provident on December 17, 2009 and — as of December 21, 2009, the date they filed their complaint — had received no response. Id at 8. These allegations are not sufficient to support plaintiffs' claim for violations of RESPA. Critically, only four days had elapsed between plaintiffs' mailing of the request and defendants' alleged failure to respond. The plain language of the statute does not require any action by the servicer until twenty days after receipt of the request. 12 USC § 2605(e)(1)(A). These allegations are therefore insufficient to establish a violation of RESPA.

In response to defendants' motion to dismiss, plaintiffs argue that — as of December 15, 2010 — they still had not received any response. Doc #30 at 8. Plaintiffs, however, did not provide any evidence to support this claim, let alone evidence that the court may properly consider in the context of a FRCP 12(b)(6) motion. Moreover, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v Cal Dept of Corrections, 151 F3d 1194, 1197 n1 (9th Cir 1998).

Accordingly, the court GRANTS defendants' motion to dismiss plaintiffs' third cause of action for violations of RESPA.

//
//
//

**12**

### C

Plaintiffs' ninth cause of action for violation of California Business & Professions Code section 17200 alleges that defendants engaged in a variety of unlawful business practices, including "misrepresentations and concealment [of] the inception, terms, ownership and servicing [of] Plaintiffs' loan, foreclosure on the Subject Property without complying with Civil Code §§ 2923.5 and 2924, and the conspiracy to defraud and defrauding of Plaintiffs to induce them to enter into and continue making payments under the subject loan." Doc #1 at 18.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." Cal Bus & Prof Code § 17200. "The scope of the UCL is quite broad.[] Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." <u>McKell v Washington Mutual, Inc</u>, 142 Cal App 4th 1457, 1471 (2006). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." <u>Cel-Tech Communications, Inc v Los Angeles Cellular Telephone Co</u>, 20 Cal 4th 163, 180 (1999) (internal quotations omitted). "Virtually any law — federal, state or local — can serve as a predicate for an action under Business and Professions Code section 17200." <u>Durell v Sharp Healthcare</u>, 183 Cal App 4th 1350, 1361 (2010), quoting <u>Ticconi v Blue Shield of Cal Life & Health Ins Co</u>, 160 Cal App 4th 528, 539 (2008).

Plaintiffs incorporate the allegations in their cause of action for unlawful foreclosure and violations of California Civil

Code section 2923.5 to support their claim for unlawful business practices. As discussed above in section IIIA1, plaintiffs have alleged sufficient facts to establish a violation of California Civil Code section 2923.5. Therefore, plaintiffs have also stated a claim for unlawful business practices under section 17200. Accordingly, the court DENIES defendants' motion to dismiss the ninth cause of action for unlawful business practices.

## IV

For the foregoing reasons, the court GRANTS defendants' motion to dismiss the second, third, fourth, fifth, sixth, seventh, eighth, tenth and eleventh causes of action and DENIES defendants' motion to dismiss the first and ninth causes of action.

Plaintiffs are granted leave to amend and shall serve and file an amended complaint on or before February 18, 2011.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Judge